# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BYUNG HWA YOO, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 1:17-cv-0184 (KBJ) |
| DISTRICT OF COLUMBIA, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION REGARDING
## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

On January 29, 2017, plaintiffs Byung Hwa Yoo and Chang Choi (collectively, "Plaintiffs") commenced this action against the District of Columbia, to recover a total of $94,739.05 in attorney fees and costs associated with an administrative proceeding under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq*. On January 31, 2017, the Court referred this matter to a magistrate judge for full case management (*see* Minute Order of Jan. 31, 2017), and Plaintiffs thereafter filed the requisite motion for attorney fees and costs (*see* Pls.' Mot. for Attorney Fees and Costs, ECF No. 9). Currently before this Court is the Report and Recommendation that the assigned Magistrate Judge, Deborah A. Robinson, has filed with respect to Plaintiffs' fee motion. (*See* Report & Recommendation ("R & R"), ECF No. 15.) [1]

Magistrate Judge Robinson determined the attorney fees, paralegal fees, and costs that Plaintiffs incurred in litigating the underlying administrative proceeding. With respect to attorney fees, Magistrate Judge Robinson recommended that this Court

---

[1] The Report and Recommendation is attached hereto as Appendix A.

award Plaintiff attorney fees "at their attorney's applicable *Laffey* billing rate for the number of hours claimed[,]" for a total of $89,346.40 (*id.* at 14; *see also id.* at 4), as well as paralegal fees in the amount of $154, which likewise represents the number of paralegal hours claimed "at the applicable *Laffey* billing rate" (*id.* at 15; *see also id.* at 5). The Report and Recommendation further suggests that Plaintiffs be awarded $1320.15 in costs, including $70.20 for mileage (130 miles at $0.54 per mile instead of the requested $0.54 per mile), $30 for parking, $78.60 for postage, and $ $1,141.35 for copying (all the pages requested at $0.15 per page instead of the requested $0.25 per page).[2] (*See id.* at 4, 15–16.)

The Report and Recommendation also advised the parties that they "may file written objections to this report and recommendation[,]" and warned that, "[i]n the absence of timely objections, further review of issues addressed may be deemed waived." (*Id.* at 17.) *See also Gov't of Rwanda v. Johnson*, 409 F.3d 368, 376 (D.C. Cir. 2005) ("[O]bjections to magistrate rulings are forfeited absent timely challenge in the district court[.]"). Magistrate Judge Robinson further informed the parties that any objections must "specifically identify the portions of the findings and recommendations to which objection is made and the basis of each objection." (R & R at 17.) To date, no such objections have been filed.

This Court finds that Magistrate Judge Robinson has thoroughly considered the issues raised in this action, and, given that neither party has filed an objection, it will

---

[2] With respect to the allowable mileage costs, Magistrate Judge Robinson explained that "[j]udges of this Court previously have awarded mileage costs at the federal government's mileage rate set forth by the General Services Administration" rather than the D.C. Superior Court rate that Plaintiffs requested. (R&R at 15.) She further found that "Plaintiffs' claimed copying costs of $.025 per page . . . is in excess of the customary rate" of $0.15 per page.

**ADOPT** the attached Report and Recommendation's findings and conclusions in their entirety. Thus, as set forth in the accompanying Order, Plaintiffs' motion for attorney fees and costs will be **GRANTED IN PART**, and they will be awarded $89,346.40 in attorney fees; paralegal fees in the amount of $154; and $1320.15 in costs.[3]

DATE:  January 7, 2019

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge

---

[3] Plaintiffs' motion for costs is granted only in part, insofar as the Court agrees with Magistrate Judge Robinson's reasoning regarding the costs allowed.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BYUNG HWA YOO, *et al.*

    Plaintiffs,

v.

DISTRICT OF COLUMBIA,

    Defendant.

Civil Action No. 17-00184
KBJ/DAR

## REPORT AND RECOMMENDATION

Plaintiffs Byung Hwa Yoo and Chang Choi bring this action against Defendant, the District of Columbia, to recover a total of $94,739.05 in attorney's fees and costs associated with an administrative proceeding conducted pursuant to the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400, *et seq*. Complaint (ECF No. 1) at ¶ 5. Pending for consideration by the undersigned is Plaintiffs' Motion for Attorney['s] Fees and Costs ("Plaintiffs' Motion") (ECF No. 9). Upon consideration of Plaintiffs' motion, the memoranda in support thereof and in opposition thereto (ECF Nos. 9-3, 10, 11, 13, 14), the exhibits offered by the parties and the entire record herein, the undersigned will recommend that Plaintiffs' motion be granted in part.

### I. Background

Plaintiffs are the parents of W.C., a resident of the District of Columbia eligible for special education and related services. *See* Hearing Officer's Determination ("HOD") (ECF 9-4) at 6. On April 27, 2016, Plaintiffs filed an administrative due process complaint against District of

Columbia Public Schools ("DCPS"), in which they sought "reimbursement from Respondent District of Columbia Public Schools (DCPS) for [W.C.'s] enrollment at [Nonpublic School] for the 2015-2016 school year[,]" and other relief for "alleged denials of a free and appropriate education (FAPE) to [W.C.] since the 2010-2011 school year." *Id.* at 1–2. The following issues were presented:

> I. Whether DCPS denied [W.C.] a FAPE by failing to develop an appropriate IEP for [W.C.] at the IEP meetings held in February 2014, November 2014, December 2014 and June 2015 in that:
>
>> a. At each of the above IEP meetings, the IEP teams failed to discuss, determine and indicate on [W.C.'s] IEPs what was the appropriate Least Restrictive Environment for [W.C.] and the type of placement [W.C.] needed along the continuum of alternative placements;
>>
>> b. DCPS denied [W.C.] a FAPE by delegating the placement and Least Restrictive Environment determination/decision to a DCPS team that did not include Petitioners and individuals knowledgeable about [W.C.];
>>
>> c. The IEP teams failed to include Applied Behavior Analysis (ABA) on any of the above IEPs;
>>
>> d. The IEPs did not include the services of a one-on-one dedicated aide.
>
> II. Whether DCPS denied [W.C.] a FAPE by failing to offer [W.C.] placement in a program that could provide [W.C.] with a FAPE;
>
> III. Whether DCPS denied [W.C.] a FAPE for the last two years by failing to issue Prior Written Notices informing the Petitioners of the placement for the [W.C.] in an appropriate program and describing what options had been considered, thereby depriving Petitioners of the ability to meaningfully participate and make meaningful decisions concerning [W.C.'s] education;
>
> IV. Whether DCPS denied [W.C.] a FAPE since the 2014-2015 school year by requiring Petitioners to fund the services of a one-on-one aide to assist [W.C.] at school;

* * *

VI. Whether DCPS denied [W.C.] a FAPE by failing to convene an IEP/MDT meeting to review and revise [W.C.'s] IEP based on the new information contained in the May 2015 [Independent Educational Evaluation] neuropsychological evaluation report;

VII. Whether DCPS denied [W.C.] a FAPE by failing to conduct a functional behavioral assessment (FBA) and develop a behavior intervention plan after repeated requests from Petitioners to do so, beginning over two years ago;

VIII. Whether DCPS denied [W.C.] a FAPE by failing to provide ABA Therapy services to [W.C.] and include it on his IEPs;

IX. Whether DCPS denied [W.C.] a FAPE by failing to develop a safety plan after being on notice for several years that [W.C.] had aggressive behaviors and was injurious to himself and others;

X. Whether DCPS denied [W.C.] a FAPE by failing to: a) inform Petitioners of the availability of ESY programs; b) ensure that [W.C.'s] IEP team discussed and determined [W.C.'s] need for [Extended School Year ("ESY")] services and c) offered [W.C.] an appropriate placement in an ESY program during the summers of 2011, 2012, 2013, 2014 and 2015 and

XI. Whether DCPS denied [W.C.] a FAPE by failing to conduct an assistive technology (AT) evaluation of [W.C.] beginning more than two years ago.

HOD at 4–5.

As relief, Plaintiffs requested that the Hearing Officer order DCPS to (1) "reimburse [Plaintiffs] for [W.C.'s] enrollment, transportation and related expenses to attend Nonpublic School for the 2015-2016 school year"; (2) "reimburse Petitioners for their expenses to provide a one-on-one aide for [W.C.] at City Elementary School[,]" and (3) "reimburse Petitioners for the cost of summer programs they provided for [W.C.]." HOD at 5.[1]  Finally, Plaintiffs sought an award of compensatory education "for the denials of [a] FAPE alleged in the complaint." *Id.*

---

[1] Plaintiffs withdrew an issue designated "V[,]" and a request for prospective placement and other services for the 2016–2017 school year. *Id.* at 4, 5.

The Hearing Officer concluded that Petitioners "were justified in unilaterally placing [W.C.] in a private school for the 2015-2016 school year and that the equities weigh in favor of reimbursement." HOD at 47; *see also id.* at 48 ("the parents' private placement of [W.C.] at Nonpublic School . . . was proper under the IDEA.") Additionally, the Hearing Officer ordered that DCPS reimburse Plaintiffs for their costs of hiring a graduate student to provide W.C. with in-school support during the 2014–2015 school year. *Id.* at 49. The Hearing Officer denied without prejudice Plaintiffs' request for compensatory education for the failure of DCPS to provide a dedicated aide beginning November 2014 through the end of the 2014–2015 school year. *Id.* at 50.

Plaintiffs then commenced the instant action, requesting a total of $94,739.05 in attorney's fees and costs—$89,500.40 in fees and $5,238.65 in costs—incurred during the underlying administrative proceedings. Plaintiffs' Motion at 1. Plaintiffs submit that they were the prevailing parties in the administrative proceeding, and that Defendant now is liable for the fees and costs reasonably incurred. Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs Motion for Attorney['s] Fees ("Plaintiffs' Memorandum") (ECF No. 9-3) at 1. Plaintiffs further submit that an award of attorney's fees at their attorney's and paralegal's applicable *Laffey* billing rate is warranted by both the complexity of the underlying administrative proceedings, *see id* at 10–13, and the "lengthy period of time that lapses between prevailing at the administrative hearing and actually getting paid[,]" *see id.* at 15–16.

## II. The Parties' Contentions

Plaintiffs' request represents attorney's fees in the amount of $89,346.40, for 157.30 hours, at their attorney's claimed *Laffey* billing rate of $568 per hour, and paralegal fees in the amount of

$154.00 for the services of Mery Williams at the claimed paralegal *Laffey* billing rate of $154 per hour for 1.0 hour. *See* Plaintiffs' Invoice (ECF No. 9-6). Of the total hours billed by Plaintiffs' attorney, 11.1 hours are attributed to the attorney's travel time. *Id.* Additionally, the invoice filed by Plaintiffs includes mileage costs billed at a rate of $0.58 cents per mile for a total of $75.40, parking costs of $30, postage costs of $78.60, and copying costs billed at a rate of $0.25 cents per page for a total of $1,902.25. *Id.* at 15–16

Plaintiffs aver that they were the prevailing parties, the underlying administrative proceedings involved complex IDEA litigation, and the requested amount of attorney's fees is reasonable. *See generally* Plaintiffs' Memorandum. Plaintiffs further aver that both the number of hours and the hourly rate claimed by their attorney and paralegal are reasonable, as their attorney has submitted evidence related to the billing practices, skill, experience, and reputation of herself and the paralegal, and the prevailing market rates in the community. *Id.* at 2–3, 14; *see also* Plaintiffs' Invoice; Affidavit of Elizabeth T. Jester Esq. (ECF No. 9-2). As additional evidence, Plaintiffs filed a total of four verified statements of practitioners specializing in IDEA litigation (ECF Nos. 9-12, 9-13, 9-14 and 9-15), a 2015 National Law Journal Billing Survey (ECF No. 9-10) and a 2013 National Law Journal Billing Survey (ECF No. 9-11), as evidence that the billing rates requested by Plaintiffs' attorney are "a reflection of market rates in the District of Columbia for IDEA special education litigation at both the administrative level and the federal court level." *Id.* at 4–8. Last, Plaintiffs filed the USAO Attorney's Fee Matrix – 2015-2017 (ECF No. 9-7) and a Statement of Interest of the United States (ECF No. 9-16), as evidence that the billing rates requested by Plaintiffs' attorney "track those rates which are reflected in the USAO *Laffey* Matrix" and are "appropriate in the instant case." *Id.* at 5–6, 8.

Defendant, in its opposition to Plaintiffs motion, contends that the proposed hourly rates of Plaintiffs' attorney are unreasonable and unsupported by evidence, and that Plaintiffs' attorney has invoiced for items that are not reimbursable under the IDEA. Defendant's Opposition to Plaintiffs' Motion for Attorney's Fees (ECF No. 10) at 1. Defendant makes no reference to Plaintiffs' status as prevailing parties, or to the reasonableness of the number of hours claimed by Plaintiffs, seemingly conceding both issues. *See generally* Defendant's Memorandum of Points and Authorities in Support of Defendant's Opposition to Plaintiffs' Motion for Attorney's Fees ("Defendant's Opposition") (ECF No. 10). Instead, Defendant asks that (1) the award of attorney's and paralegal's fees be reduced to a billing rate of no more than "75% of the USAO Matrix rate[,]" *see id.* at 16–19; (2) travel time be reduced to no more than one-half of the reduced rate, *see id.* at 20–21; (3) the mileage reimbursement request be denied, *see id.* at 21–22; and (4) copying and faxing costs be reduced "to the customary rate of $0.15 cents per page[,] *see id.* at 22.[2]

Defendant submits that none of the evidence offered by Plaintiffs aids the court in the determination of a reasonable rate, or "provide[s] the requisite facts linking IDEA administrative proceedings to complex federal litigation." Defendant's Opposition at 11. Defendant further submits that "Plaintiff[s] offer[] no credible reference as to the reasonable market rate for a paralegal engaged in IDEA administrative proceedings." *Id.* at 19. Defendant states that it nonetheless "is willing to accept" a rate of 75% of the *Laffey* Matrix rate for Plaintiffs' paralegal. *Id.*[3]

---

[2] Defendant's assertion that Plaintiffs "billed an excessive amount" for faxing is misplaced: no faxing costs appear on the invoice. *See id. See generally* Plaintiffs' Invoice. Accordingly, the undersigned omits any further discussion herein of the authorities applicable to reductions with respect to the argument that the award of costs be reduced to account for Plaintiffs billing of faxing costs at "an excessive amount.

[3] Absent from Defendant's opposition is any suggestion that any award should be reduced to account for Plaintiffs' degree of success on their claims. Accordingly, the undersigned omits any further discussion herein of the authorities

Plaintiffs, in their reply, submit that Defendant has failed to rebut Plaintiffs' showing that the claimed rates are reasonable. *See generally* Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Attorney['s] Fees and Costs (ECF No. 11).

Plaintiffs then supplemented their motion by the submission of four additional declarations and verified statements of practitioners specializing in IDEA litigation as further evidence of their attorney's hourly billing rate and the prevailing market rate. *See* Plaintiffs' Supplement to Plaintiffs' Motion for Attorney['s] Fees and Costs (ECF No. 13).

In response to Plaintiffs' supplemental memorandum, Defendant asserts that the declarations do not overcome Plaintiffs' deficient effort to establish that the claimed *Laffey* billing rate is the prevailing market rate for IDEA litigation. *See generally* Defendant's Response to Plaintiffs' Supplement to Their Motion for Attorney['s] Fees and Costs (ECF No. 14).

### III.  Applicable Standards of Review

#### A. *Determination of a Reasonable Billing Rate*

In actions for attorneys' fees that are brought pursuant to the IDEA, "the court, in its discretion, may award reasonable attorneys' fees as part of the costs" to the prevailing party. 20 U.S.C. § 1415(i)(3)(B)(i). The settled protocol for the evaluation of a request for an award of fees in this context requires that a court first determine "whether the party seeking attorney's fees is the prevailing party," and if so, then evaluate whether the requested fees are reasonable. *E.g., Dobbins v. District of Columbia*, Civil Action No. 16-01789, 2017 WL 4417591 (D.D.C. Sept. 29, 2017); *Wood v. District of Columbia*, 72 F. Supp. 3d 13, 18 (D.D.C. 2014) (citing *Staton v. District of*

---

applicable to reductions to account for a plaintiff's limited or partial success, and whether there is any basis for such an adjustment here.

*Columbia*, Civil Action No. 13-00773, 2014 WL 2700894, at *3 (D.D.C. June 11, 2014), *adopted by* 2014 WL 2959017 (D.D.C. July 2, 2014)); *Douglas v. District of Columbia*, 67 F. Supp. 3d 36, 39–41 (D.D.C. 2014).

The common mechanism for the determination of a reasonable award of fees generally is "the number of hours reasonably expended" multiplied by a reasonable hourly rate. *E.g., Dobbins*, 2017 WL 4417591, at *3; *Wood*, 72 F. Supp. 3d at 18 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The party requesting fees bears the burden of demonstrating the reasonableness of the hours expended, and "may satisfy this burden by submitting an invoice that is sufficiently detailed to permit the District Court to make an independent determination whether or not the hours claimed are justified." *Wood*, 72 F. Supp. 3d at 18 (citing *Hensley*, 461 U.S. at 433).

The party requesting fees "also bears the burden of establishing the reasonableness of the hourly rate sought," and in doing so, "must submit evidence on at least three fronts: the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Dobbins*, 2017 WL 4417591, at *3. If the party requesting fees satisfies its burden, "there is a presumption that the number of hours billed and the hourly rates are reasonable," and "the burden then shifts to the [opposing party] to rebut" this presumption. *Id.* (citations and internal quotation marks omitted).

In this jurisdiction, the *Laffey* Matrix serves as the commonly accepted benchmark for determining the prevailing market rates for attorneys' fees in complex federal court litigation. *See Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015).[4] As a fee applicant "should also

---

[4] The *Laffey* matrix is "a schedule of charges based on years of experience developed in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *rev'd on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied,* 472 U.S. 1021 [105 S.Ct. 3488, 3489, 87 L.Ed.2d 622] [ ](1985)." *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1105 (D.C. Cir. 1995) (footnote omitted). The Civil Division of the United States Attorney's Office for the District of Columbia maintains and updates a *Laffey* matrix, available at https://www.justice.gov/usao-dc/file/796471/download.

submit evidence, including affidavits, regarding her counsel's general billing practices, skill, experience and reputation[,]" *Dobbins*, 2017 WL 4417591, at *3 (citations and internal quotation marks and alterations omitted), "[t]he prevailing market rate provides merely a starting point for determining the reasonableness of a billing rate[.]" *Id.*

There is no consensus among the judges of this Court with respect to whether an attorney's *Laffey* rate, or alternatively, a percentage of that rate, is a "reasonable" rate in the context of actions brought pursuant to the IDEA. *See, e.g., McNeil v. District of Columbia*, 233 F. Supp. 3d 150, 154–55 (D.D.C. 2017) (noting that "[the judges of this Court] are split and do not agree on a consistent rate for either IDEA litigation or subsequent fee proceedings.") (citing *Kelsey v. District of Columbia*, 219 F. Supp. 3d 197, 205 (D.D.C. 2016)). One judge of this Court has noted that IDEA cases "take a variety of litigation paths" and cannot be dismissed as "categorically routine or simple." *Sweatt v. District of Columbia*, 82 F. Supp. 3d 454, 459 (D.D.C. 2015) (internal quotation marks omitted).[5]

Consistent with this view, some judges of this Court "have rejected the suggestion that IDEA administrative litigation is categorically less complex than other forms of litigation, and reaffirmed that IDEA cases are sufficiently complex to allow application of the *Laffey* Matrix." *Sweatt*, 82 F. Supp. 3d at 459 (alterations omitted). This view also is predicated upon the rationale that "[s]ince an attorney's total fee award is determined by multiplying the number of hours expended by the hourly rate, reducing the *Laffey* rates to reflect the brevity of the case improperly accounts for the length of the proceedings twice"; thus, "[t]he complexity of the case is accounted

---

[5] By way of illustration, the court observed that "IDEA cases require 'testimony from education experts regarding whether a student has been denied a free and public education,' and plaintiffs' counsel must 'understand the bureaucratic workings of [DCPS] and become conversant with a wide range of disabling cognitive, emotional, and language-based disorders and the corresponding therapeutic and educational approaches.'" *Sweatt*, 82 F. Supp. 3d at 460 (citations omitted).

for by the number of hours expended and should not be accounted for by a blunt reduction of rates before applying the rates to the number of hours expended." *Id.* at 460; *see also Dobbins*, 2017 WL 4417591, at *3.

Other judges of this Court, characterizing IDEA actions as other than "complex federal litigation," apply a rate equivalent to a percentage of the *Laffey* rate. *E.g., Lee v. District of Columbia*, Civil Action No. 15-01802, 2018 WL 400754 (D.D.C. Jan. 12, 2018) (finding that the plaintiff failed to establish that IDEA litigation qualified as complex federal litigation, and awarding attorneys' fees at 75% of the attorneys' applicable *Laffey* rates); *Cox v. District of Columbia*, 264 F. Supp. 3d 131 (D.D.C. 2017) (finding that underlying IDEA administrative proceedings were not sufficiently complex to warrant an award of fees at the attorney's full *Laffey* rate, and awarding fees at 75% of the attorney's *Laffey* rate).

As this Circuit recently has observed, "[t]he IDEA provides no further guidance for determining an appropriate fee award." *Eley*, 793 F.3d at 100. While the Circuit thus far has declined to categorically decide "whether IDEA litigation is in fact sufficiently 'complex' to use [some version of the *Laffey* Matrix][,]" it has criticized the mechanical application of the proposition "that IDEA cases, as a subset of civil rights litigation, fail to qualify as 'complex' federal litigation." *Id.* In a concurring opinion, a member of the *Eley* panel wrote that "I would simply add that, in my view, the United States Attorney's Office *Laffey* matrix is appropriate for IDEA cases." *Id.* at 105 (Kavanaugh, J., concurring).[6]

---

[6] In December 2016, a different panel of the Circuit affirmed a District Court judge's exercise of discretion to award fees to an IDEA prevailing party at 75% of counsel's *Laffey* rates. *See Reed v. District of Columbia*, 843 F.3d 517, 522, 524–25 (D.C. Cir. 2016). However, as that panel of the Circuit neither overturned *Eley*, nor held that IDEA litigation, categorically, is not complex federal litigation, the undersigned concludes that *Reed* is limited to its facts.

### B. Allowable Costs

Costs in addition to attorneys' fees may be included as part of the award to a prevailing party. *See, e.g., Daniels v. District of Columbia*, Civil Action No. 14-00665, 2017 WL 1154948, at *4 (D.D.C. Mar. 27, 2017). In this jurisdiction, costs incurred for copying, faxing, and postage are customarily included in such awards. *Id.*; *see also McClam v. District of Columbia*, 808 F. Supp. 2d 184, 190–91 (D.D.C. 2011) (citations omitted). An attorney's travel time also may be included as part of an award of costs, although, generally at a rate of no more than half of the attorney's reasonable billing rate. *See, e.g., James v. District of Columbia*, Civil Action No. 14-02147, 2018 WL 1461899, at *12 (D.D.C. Mar. 23, 2018) (citing *Bucher v. District of Columbia*, 777 F. Supp. 2d 69, 77 (D.D.C. 2011) ("In this circuit, travel time generally is compensated at no more than half the attorney's appropriate hourly rate." (internal quotation marks omitted))). Mileage charges may be included in awards pursuant to IDEA, if such charges are routinely billed by an attorney to her client. *Daniels*, 2017 WL 1154948 *4 (citation omitted). Finally, parking costs are allowable in fee awards in IDEA cases. *DeLa Cruz v. District of Columbia*, 82 F. Supp. 3d 199, 210 (D.D.C. 2015) (finding that $18.00 charge for parking "should be reimbursed at cost[.]").

### C. Fees of a Paralegal

The fees of paralegals may be included in an award to a prevailing party in an IDEA action. *See* 20 U.S.C. § 1415(i)(3)(B); s*ee also McAllister v. District of Columbia*, 21 F. Supp. 3d 94, 105–06 (D.D.C. 2014) (awarding to a prevailing party in an IDEA action fees for the work of paralegals who performed "substantive legal work for which a lawyer is responsible.") (citations

omitted). As a prerequisite to such an award, the movant must offer evidence with respect to the paralegal's experience and education. *McAllister*, 21 F. Supp. 3d at 105–06.

It is settled that the fees billed for clerical tasks are not compensable. "Tasks that are clerical in nature cannot be included in attorneys' fees awards." *Beckwith v. District of Columbia*, 254 F. Supp. 3d 1, 5 (D.D.C. 2017) (offering the filing of documents, the scheduling of meetings, and copying and faxing documents as examples of non-compensable tasks); *see also DL v. District of Columbia*, 267 F. Supp. 3d 55, 78 (D.D.C. 2017) ("tasks such as copying and scanning are traditionally considered non-compensable clerical work").

### IV. Discussion

#### A. *Plaintiffs' Attorney's Reasonable Billing Rate*

As Defendant does not dispute the number of hours claimed, the sole issue to be determined is Plaintiffs' attorney's reasonable billing rate. The undersigned has awarded fees at the applicable *Laffey* rates, and, incorporating herein the rationale previously articulated, does so here. *See, e.g., Daniels*, 2017 WL 1154948, at *5. The undersigned knows of no reason warranting reconsideration of this determination.

Plaintiffs, having satisfied their burden of production, the burden thus "shifts to the District to 'provide specific contrary evidence tending to show that a lower rate would be appropriate.'" *Wimbish v. District of Columbia*, Civil Action Nos. 15-01429, 15-02182, 2017 WL 1743497, at *4 (D.D.C. May 3, 2017) (citation and internal quotation marks omitted). The undersigned finds that Defendant has failed to carry such burden, indeed, the undersigned previously has found the bare claim that 75% of the *Laffey* rate is warranted to be insufficient. *See, e.g., Daniels*, 2017 WL 1154948, at *6 ("[T]he undersigned has rejected the proposition that an award of fees to a

prevailing party in an IDEA action must be confined to a rate of no more than three-quarters of the applicable *Laffey* Matrix rates[.]"); *see also Wimbish*, 2017 WL 1743497, at *4 (The District's citation [exclusively] to . . . cases fails to meet its rebuttal burden of putting on 'equally specific countervailing evidence.'") (citation omitted).

The undersigned again will apply the rationale articulated in *Dobbins* and the authorities cited therein: an attorney's applicable *Laffey* billing rate generally must be treated as reasonable where—as here—the fee application is accompanied by evidence of the attorney's skill, experience and reputation, and the prevailing market rates in this community.[7] As the Circuit has not had occasion to resolve the divergent approaches of the judges of the District Court to the determination of a reasonable billing rate, the undersigned has no occasion to reconsider the undersigned's analysis. In any event, the undersigned finds that Defendant has failed "to 'provide specific contrary evidence tending to show that a lower rate would be appropriate.'" *Dobbins*, 2017 WL 4417591, at *4 (citing *Wimbish*, 2017 WL 1743497, at *4) (citation and internal quotation marks omitted). Instead Defendant—with little explanation—claims that the declarations and affidavits Plaintiffs offer as evidence "do not assist the Court in determining a reasonable hourly rate[,]" Defendant's Opposition at 11–12, and that "[t]here is simply no evidence that USAO Matrix rates should apply to IDEA administrative proceedings[,]" *id.* at 12.[8]

To the extent Defendant offers evidence at all, such submission is confined to a "Statement of Interest of the United States[,]" (ECF No. 10-1) filed with respect to litigation in an unrelated

---

[7] Absent from Defendant's opposition is any suggestion that Plaintiffs' attorney has failed to offer evidence regarding her skill, experience and reputation.

[8] The undersigned finds Defendant's argument that "the funds [used to pay attorneys' fees to prevailing parties in IDEA actions] would be better spent on the children the IDEA exists to protect[,] *id.* at 12, effectively invites the undersigned to entirely disregard the fee-shifting statue altogether. To the extent which DCPS advocates for such a course, such advocacy should be directed to Congress, and not to the undersigned.

civil action. The United States is not a party to the instant action, and the statement is devoid of any relevance to the instant action. The undersigned regards the statement, read in context, as an opinion regarding best practices for the formulation of hourly rate matrices. For all of these reasons, the undersigned finds the statement of little probative value.

Thus, the undersigned will recommend that Plaintiffs be awarded attorney's fees at their attorney's applicable *Laffey* billing rate for the number of hours claimed.

### B. Paralegal's Reasonable Billing Rate

Defendant, in like manner, does not dispute the number of hours claimed for the work of a paralegal, Mery Williams; thus the sole issue to be determined is the paralegal's reasonable billing rate. The undersigned finds that Plaintiffs have carried their burden in justifying the requested rate for the services Ms. Williams provided on the instant case. Plaintiffs have provided sufficient information detailing her experience and education, stating that she "has formal paralegal training and over eighteen years of experience as a full-time paralegal" and performed "work delegated to her" by Plaintiffs' attorney under attorney supervision. *See* Plaintiffs' Memorandum at 14; *see also* Affidavit of Elizabeth T. Jester, Esq. at ¶ 14.

Defendant offers little explanation for its opposition to the claimed rate of Ms. Williams, stating generally that Plaintiffs "failed to support 'rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished[.]'" Defendant's Opposition at 19. Accordingly, the undersigned finds the paralegal's billing rate is the applicable *Laffey* billing rate claimed, *see, e.g., Green v. District of Columbia,* 102 F. Supp. 3d 15, 22–23 (D.D.C. 2015) (finding the requested *Laffey* paralegal billing rate warranted when paralegal had

19 years of experience), and will recommend that Plaintiffs be awarded the fees of the paralegal at the applicable *Laffey* billing rate for the number of hours claimed.

### C. Allowable Costs

  1) Travel Time

Plaintiffs seek reimbursement for their attorney's travel time. The undersigned has determined that the applicable *Laffey* billing rate for Plaintiffs' attorney is reasonable; thus no further discussion of the rate is warranted here. Defendant argues that Plaintiffs' attorney "billed travel time at her full hourly rate; double the amount that is allowable by case law." Defendant's Opposition at 20. However, Defendant's argument is misplaced as Plaintiffs' attorney invoiced travel time at one-half her applicable *Laffey* billing rate, *see* Plaintiffs' Invoice at 4, 7–10, 12, for a total of 11.1 hours. Consistent with the settled authority in this District, *see, e.g.*, *James*, 2018 WL 1461899, at *12, the undersigned will recommend that Plaintiffs' attorney's travel time be awarded at the amount claimed.

  2) Mileage and Parking Costs

Plaintiffs claim mileage costs at a rate of $0.58 cents per mile, which is "the rate paid by [the] D.C. Superior Court." Plaintiffs' Memorandum at 14. Judges of this Court previously have awarded mileage costs at the federal government's mileage rate set forth by the General Services Administration ("GSA"). *E.g.*, Cox, 264 F. Supp. 3d at 152.[9] The undersigned will recommend

---

[9] Defendant questions whether "the government is responsible for subsidizing her travel from her office in Great Falls, Virginia, which is considerably outside of the jurisdiction in which she practices[.]" Defendant's Opposition at 22. Defendant cites no authority in support of its apparent contention that the location of the office of Plaintiff's attorney should preclude an award of the travel time as a cost. The undersigned knows of no authority for such a proposition, and indeed, Defendant cites none. More germane to this discussion, however, is the rejection of this contention in an action in which the same attorney was awarded travel costs. *Id.* ("The District's argument does not hold water. Great

that mileage costs be awarded in accordance with the 2016 GSA mileage rate for privately owned automobiles.[10]

Plaintiffs also claim as costs a total of $30 for parking in the District of Columbia on the dates of the administrative due process hearing. Defendant offers no authority for the proposition that the cost claimed is excessive, or otherwise not one appropriately borne by Defendant. The undersigned, consistent with the settled authority, *see, e.g.*, *DeLa Cruz*, 82 F. Supp. 3d at 210, will recommend that this cost be included in the award to Plaintiffs.

3) Postage and Copying Costs

The undersigned finds that the costs Plaintiffs claimed for postage are reasonable and generally included as part of the award to a prevailing party in IDEA litigation in this District. *See, e.g., Daniels,* 2017 WL 1154948, at *4 (finding postage costs are customarily included in fee awards). However, Plaintiffs' claimed copying costs of $0.25 cents per page for 7,609 pages totaling $1,902.25 is in excess of the customary rate. *See James*, 2018 WL 1461899, at *12 (citing *Cox*, 264 F. Supp. 3d at 150) (finding reasonable costs are normally included in the fee award and awarding copying costs at a rate of $0.15 cents per page); *see also McClam*, 808 F. Supp. 2d at 190–91 (concluding that $0.25 cents per page was excessive). Accordingly, the undersigned will recommend that Plaintiffs' attorney's postage costs be awarded in full, and the claimed copying costs be reduced to $0.15 cents per page.

---

Falls is a suburb of Washington D.C., somewhere entirely reasonable for an attorney representing a client in the District of Columbia to live and work.").

[10] Plaintiffs' attorney invoiced mileage costs during 2016. *See* Plaintiffs' Invoice at 15–16. The GSA determines and updates the federal government's mileage rate annually, available at http://www.gsa.gov/portal/content/103969.

V.  **Conclusion**

On basis of the full extent of the foregoing findings, it is, this 6th day of August, 2018,

**RECOMMENDED** that Plaintiffs' Motion for Attorney['s] Fees (ECF No. 9) be **GRANTED IN PART** and that

(1) except with respect to the attorney's travel time, fees be awarded for the number of hours claimed at the attorney's applicable *Laffey* billing rate;

(2) the attorney's claimed travel time be awarded at one-half of her applicable *Laffey* billing rate;

(3) fees of the paralegal be awarded for the number of hours claimed at the paralegal's applicable *Laffey* billing rate;

(4) the claimed mileage costs be awarded in accordance with the 2016 GSA mileage rate for privately owned automobiles;

(5) the claimed parking and postage costs be awarded in full, and

(6) the claimed costs for copying be reduced to a rate of $0.15 cents per page.

Deborah A. Robinson
*Digitally signed by Deborah A. Robinson*
*Date: 2018.08.06 17:31:31 -04'00'*

DEBORAH A. ROBINSON
United States Magistrate Judge

**Within fourteen days, either side may file written objections to this report and recommendation. The objections shall specifically identify the portions of the findings and recommendations to which objection is made and the basis of each objection. In the absence of timely objections, further review of issues addressed may be deemed waived.**